<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JIMMY BAIBARS**<br><br>*Plaintiff,*<br><br>v.<br><br>**CAROLYN W. COLVIN,**<br>**Acting Commissioner of Social Security,**<br><br>*Defendant.* | **Civil Action No. 14-6273**<br><br>**OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Jimmy Baibars' ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), of Administrative Law Judge, the Hon. Hilton R. Miller's (the "ALJ"), unfavorable decision on Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income Benefits (collectively, "Disability Benefits"). For reasons set forth below, the Commissioner of Social Security's ("Commissioner") decision is **AFFIRMED**.

**I.    APPLICABLE LAW**

   **A.  Standard of Review**

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); <u>Markle v. Barnhart</u>, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995). In short, substantial evidence

consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review; it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the Commissioner's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. App'x 167 (3d Cir. 2014).

### B.  Five-Step Sequential Analysis

In order to qualify for benefits, a person must be disabled as defined by the Social Security Act and its accompanying regulation as of his date last insured.[1]  42 U.S.C. 423(a)(2); Corley v.

---

[1] A claimant's date last insured is based on his earnings record. 20 C.F.R. § 404.140(a). An individual earns one quarter of coverage for each quarter of employment where his wages are subject to Social Security taxes. 20 C.F.R. § 404.140(a)-(d). Claimants over the age of 31 must have 20 quarters of coverage over a 40 quarter period to remain insured. 20 C.F.R. § 404.130(b). Accordingly, the date last insured is the last day of the quarter in which a claimant had 20 quarters of coverage during a 10-year period. 20 C.F.R. § 404.140.

Barnhart, 102 Fed. App'x 752, at *1 (3d Cir. 2004). To determine a claimant's disability, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). Step one is to determine whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If the claimant is found to be engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must ask whether the claimant has a "residual functional capacity" such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional

3

capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503. The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

## II.   BACKGROUND

### A.  Procedural History

On December 15, 2011, Plaintiff Jimmy Baibars filed an application for disability insurance benefits ("DIB"), alleging disability as of August 1, 2010. Tr. 120-123. This application was denied on March 2, 2012, and again on reconsideration on May 21, 2012. Tr. 69-73, 76-78. Plaintiff then sought review before an administrative law judge, and a hearing before the ALJ occurred on January 15, 2013. Tr. 79-80, 94-98. On March 27, 2013, the ALJ issued an opinion, finding that Plaintiff had not provided sufficient evidence to satisfy the step two severe impairment requirement during the relevant time period of August 1, 2010 to September 30, 2010. Tr. 11-23. Review by the Appeals Council was denied on August 12, 2014. Tr. 1-6. Having exhausted his administrative remedies, on October 9, 2013, Plaintiff then timely filed the instant action seeking review of the final decision. Compl., Dkt. No. 1.

### B.  Factual Background

Plaintiff is a 66-year old man, born in the Kingdom of Jordan, who alleged in his application for DIB that he became disabled on August 1, 2010. Tr. 120-23. His undisputed date of last insured is September 30, 2010. Tr. 7. Plaintiff claims he suffers from a history of heart attacks, coronary heart disease, diabetes, and a right hip fracture. Tr. 120-23, 168. Plaintiff initially reported that he completed the twelfth grade in Jordan in 1967 but at the hearing testified that he had attended school but never finished. Tr. 34-35, 169. Plaintiff has a history of relevant work experience. From 1992 to 1995, Plaintiff worked as a fabric cutter in a factory. Tr. 169. In

2008, he worked as a loader in a warehouse. Id. And from 1999 to August 1, 2010, he worked as a self-employed salesman. Id. Plaintiff's earnings in 2010 did not meet the requirement for substantial gainful activity. Tr. 16.

Plaintiff claims that his diabetes causes dry mouth and frequent urination, and that he has had several heart attacks. Tr. 37-38. Specifically, Plaintiff's medical records indicate that he suffered two heart attacks in 2002 and 2005, each of which necessitated stent placement. Tr. 197, 200. Plaintiff, however, submitted no medical records from 2009 to 2010. Tr. 46-48.

Concerning the submission of applicable medical evidence, the record contains three treatment notes from Ghias Moussa, M.D., ("Dr. Moussa"), all from 2007, three years before Plaintiff's alleged onset date of disability. Tr. 294-301. The notes reference blood glucose testing, blood pressure reading, coronary artery disease, and diabetes. Tr. 295-96. A handwritten note dated May 14, 2007 suggests a history of coronary artery disease with stenting, as well as a history of diabetes. Id. The August 21, 2007 notation indicates that Plaintiff was "doing well" with "no acute disease." Id. The September 6, 2007 notation renewed Plaintiff's blood glucose testing strips and lancets. Id.

It is critical to note that there were no medical records submitted from 2008 to September 30, 2010, Plaintiff's date last insured. The ALJ allowed the record to remain open for fourteen days to allow Dr. Moussa to submit records for the relevant period. Tr. 48. No records were submitted.

Following the relevant period, in July 2011, Plaintiff broke his hip and underwent surgery to place a bipolar endoprosthesis in his right hip. Tr. 232, 278-79. In November 2011, Plaintiff underwent a coronary angiography. Tr. 195. The doctor noted that Plaintiff had a history of previous coronary artery disease with myocardial infarction in 2002 and 2005, as well as stent

implementation. Tr. 195. The doctor also noted that Plaintiff admitted to not seeing a physician in five years. Id. The discharging physician issued a final diagnoses of acute coronary syndrome with non-ST elevation myocardial infraction, status post triple-vessel bypass. Tr. 195, 224.

In January 2012, Dr. Moussa evaluated Plaintiff and diagnosed him with status post coronary bypass and stent, diabetes without complication, benign hypertension, and hyperlipidemia. Tr. 253. In July 2012, Dr. Moussa indicated that the Plaintiff had exertional limitations by checking boxes on an "Internal Medical Report" that would render him disabled under the Act. Tr. 269-73; 297-301. Again, in November 2012, Dr. Moussa labeled the Plaintiff as disabled. Tr. 289-90.

In March 2012, Howard Goldbas, M.D., a state agency medical expert, conducted a medical analysis, and concluded there was insufficient evidence to determine the actual severity of Plaintiff's impairments. Tr. 59, 61. Two months later, in May 2012, another state agency medical expert, Mark Jacknin, D.O., affirmed Dr. Goldbas' opinion upon reconsideration. Tr. 66.

### C. ALJ's Decision

Following the January 15, 2013 hearing, the ALJ issued a written decision on March 27, 2013. Tr. 11-23. In his decision, ALJ first determined that Plaintiff's date last insured was September 30, 2010. Tr. 16. The ALJ then found at step one that Plaintiff was not engaged in substantial gainful activity between the alleged onset date of August 1, 2010, and the last insured date of September 30, 2010. Id. The ALJ then moved on to step two of the sequential analysis, where he found that Plaintiff did not suffer from a severe impairment or combination of impairments. Id.

In reaching that conclusion, the ALJ considered the medical evidence in the record, as well as Plaintiff's testimony. Tr. 18. The ALJ noted that Plaintiff worked regularly between 2000, the

time of his first heart attack, and 2010, the year of the alleged onset date. Tr. 19. While his earnings in this time frame did not always meet the substantial gainful activity level, he did report income every year and testified that he worked full-time. Tr. 19, 167-69. Additionally, the ALJ found that although Plaintiff had a history of coronary artery disease five to ten years prior to the alleged onset date of August 1, 2010, he had stopped treatment for his condition in mid-2007, and at that time, was not reporting any acute complaints or limitations to his own treating physician. Tr. 20. Indeed, the ALJ cited the absence of any medical treatments noted after that time. Id. The ALJ rejected Dr. Moussa's claim that he had been treating Plaintiff monthly since 2008, since no medical records were ever submitted, presented, or found regarding Dr. Moussa's claim. Tr. 19. The ALJ further supported his decision by citing the lack of any objective evidence showing any significant limitations as a result of his diabetes or his heart conditions at any point in the record. Id.

The ALJ did not give great weight to Dr. Moussa's opinion. Tr. 19. The ALJ explained that while Dr. Moussa wrote that he treated Plaintiff monthly since November 2008, his own chart notes indicated only three visits in 2007 and then nothing again until 2011. Id. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act at any time from August 1, 2010, the alleged onset date, through September 30, 2010, his date last insured, and denied his claim for Disability Benefits. Id.

### III. ANALYSIS

The sole issue on appeal is whether substantial evidence supports the ALJ's step two[2] finding that Plaintiff did not have a severe impairment and, thus, was not disabled prior to September 30, 2010, his date last insured. Plaintiff asserts that substantial evidence supports a

---

[2] The parties do not dispute the first step of the five-step analysis.

finding of severity, and that the Court should remand this matter for the payment of Disability Benefits. Pl.'s Br. at 11, Dkt. No. 9. Alternatively, he argues this matter should be remanded for a new hearing "requiring the testimony of a medical expert specializing in cardiology." Id. The Court disagrees on the basis that Plaintiff's medical evidence—or more importantly, its lack thereof—suggests non-severity.

Step two of the five-step sequential analysis requires the ALJ to determine whether Plaintiff's claimed impairment or combination of impairments is severe. 20 C.F.R. § 404.1520(a)(4)(ii). A claimant's impairments are "severe" only when the ability to partake in basic work activities is significantly limited. 20 C.F.R. § 404.1520(c). If it is determined that the impairment is not severe, the inquiry ends. Id.; Ortega, 232 F. App'x at 196. Severity has been defined in the negative—that is, severity is defined "in terms of what is 'not severe.'" Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). The regulations thus warrant a finding of non-severity where an impairment or combination of impairments does not significantly limit the individual's ability to perform "basic work activities" such as "seeing, hearing, and speaking" as well as "understanding, carrying out, and remembering simple instructions." 20 C.F.R. §§ 404.1520(c), 404.1521(b); SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). In evaluating severity, the ALJ must consider only the medical evidence "in order to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28, 1985 WL 56856, at *4 (evidence of disability must relate to the relevant period); see also 20 C.F.R. § 404.131(a) ("To establish a period of disability, you must have disability insured status"). The disability inquiry does not end upon the mere diagnosis of a condition. See Jones, 954 F.2d at 128-29. Plaintiff bears the burden at step two of the sequential analysis to produce evidence that he had a severe impairment prior to his last insured date. See Bowen, 482 U.S. at 146 n.5.

Here, the ALJ found that Plaintiff failed to meet his burden of providing substantial evidence of severity. Plaintiff did not provide medical records of any kind from 2009 or 2010, much less during the relevant time period of August – September 2010. Tr. 18. Plaintiff's most relevant records are from 2007, and consist of three treatment notes referencing coronary disease and diabetes. Tr. 16-17. Although Plaintiff testified that his diabetes caused dry mouth and frequent urination, Dr. Moussa's notes do not show objective evidence that Plaintiff was limited from performing basic work activities. Although he was treated in 2008 for diabetes, no doctor visits were recorded. Tr. 46-47. There is only testimony that Dr. Moussa provided free medication, and it is unclear for how long. Id. The handwritten notes are also unsupported by any medical evidence and fail to provide sufficient explanations of the Plaintiff's incapacities. Significantly, the fact that Plaintiff was self-employed from 1999 until August 1, 2010 indicates that his diseases were not immediately disabling. Because Plaintiff bears the burden of production in step-two's severe impairment analysis, and because he did not provide any medical records for the relevant time period, the ALJ correctly determined there was insubstantial evidence.[3] See DeNafo v. Finch, 436 F.2d 737, 739 (3d Cir. 1971) (a finding of disability cannot be based on evidence that an impairment reached disabling severity after date last insured, even where the impairment existed before that date).

---

[3] Plaintiff requests, in the alternative, that the Court remand the case to the ALJ to further develop the record. Here, the ALJ satisfied his duty to investigate by requesting further documentation on Plaintiff's medical condition during the relevant time period. The ALJ gave Plaintiff two weeks to submit more information, which Plaintiff did not do. Tr. 14. Specifically, Plaintiff requests a Medical Expert ("ME") opinion. The Social Security Administration's Hearings, Appeals and Litigation Law Manual ("HALLEX") only requires an ME opinion where "[t]here is a question about the accuracy of medical test results reported" or where the ALJ "is considering finding that the claimant's impairment(s) medically equals a listing." HALLEX § 2-5-34, available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-34.html. Because neither of these conditions was met, the ALJ was not required to seek an ME opinion, and Plaintiff's request is denied.

9

Plaintiff points to several pieces of evidence to support a finding that he was severely impaired before his date last insured. None of these cures the evidentiary defect. First, Plaintiff points out that the ALJ correctly recognized the claimant's history of coronary heart disease and diabetes as early as May 14, 2007, and even acknowledged a history of coronary disease from as early as 2002. Pl.'s Br. 16-19. However, the issue is whether the diseases severely impacted Plaintiff's ability to perform basic work activities during the relevant time period. The ALJ correctly noted that simply because Plaintiff's impairments arose before his date last insured does not speak to their severity during the relevant time period.

Next, Plaintiff points to records that show that "a different and more pernicious coronary artery disease reared its head in November 2011." Pl.'s Br. at 18. Again, this evidence does not establish severity prior to September 30, 2010. While Plaintiff submits plenty of medical records from 2011 on, they all relate to his condition *after* the relevant time period. Indeed, most of his records are from after the filing date of his initial claim.

Plaintiff argues the ALJ compartmentalized Plaintiff's condition into "neat little blocks of time," and suggests the ALJ found conditions only before and after the relevant time period. However, "the ALJ's disability inquiry does not end upon the diagnosis" of a disease. In re Petition Sullivan, 904 F.2d 826, 845 (3d Cir. 1990) (citing Purter v. Heckler, 771 F.2d 682 (3d Cir. 1985)). "The ALJ must go on to evaluate whether the claimant's [disease] was so severe that 'it prevented the claimant from engaging in substantial gainful employment.'" Id. Plaintiff is required to prove that he had severe impairments based on medical evidence existing on or prior to that date. See Zirnsak v. Colvin, 777 F.3d 607, 612 (3d Cir. 2014) (providing that a disability finding cannot be based on evidence showing that an impairment reached disabling severity after the date last insured, even if the condition existed before the claimant's date last insured).

In the instant case, the objective medical evidence is too remote to suggest that the claimant could not engage in substantial gainful activity. There is no connection between Dr. Moussa's medical notes and the care received, or lack thereof, by Plaintiff. The lack of objective medical evidence does not allow the Court to infer an onset date of disability. Accordingly, Plaintiff has failed to establish he suffered a severe impairment.

## IV. CONCLUSION

Because the Court finds the ALJ's decision is supported by substantial evidence, the Commissioner's denial of disability benefits is **AFFIRMED.**

/s *Madeline Cox Arleo*
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**